UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| THOMAS KLOS and ) | |
| MESENIA GUZMÁN, as parents ) | |
| and next friends of E.K., a minor, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | No. 1:19-cv-00369-GZS |
| ) | |
| WENDY BELANGER, et al., ) | |
| ) | |
| Defendants ) | |

*ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS*
*AND RECOMMENDED DECISION ON 28 U.S.C. § 1915(e)(2) REVIEW*

Thomas Klos and Mesenia Guzmán, as parents and next friends of E.K., a minor, sue Maine School Administrative District 13 ("District"), the Maine Department of Education ("MDOE"), and 16 individuals, including school personnel, school attorneys, and MDOE personnel, for violations of, *inter alia*, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and their due process rights. *See* Complaint (ECF No. 1) ¶¶ 2, 4-21, 149-54. I grant the plaintiffs' request to proceed *in forma pauperis* and, because the complaint states a claim against the District pursuant to the IDEA, recommend that the court permit this case to proceed.[1]

---

[1] I need not and do not consider whether the plaintiffs state claims against the 16 named individuals and the MDOE, whether they state any additional claims against the District, or whether any of their claims would survive dispositive motion practice.

## I. Application To Proceed *in Forma Pauperis*

*In forma pauperis* status is available under 28 U.S.C. § 1915(a)(1). In his motion to proceed *in forma pauperis*, plaintiff Klos declares under penalty of perjury that (i) his income consists of Social Security Disability payments totaling $1,103 monthly for himself and $551 for his child, (ii) he has $74.54 in cash in a checking or savings account, (iii) he owns a 2001 Subaru Outback worth approximately $1,000, (iv) he has a mortgage payment of $730.11 monthly as well as approximately $253 monthly in utility costs (water, sewer, electricity, and phone), and (v) he has approximately $60,000 in student loan debt. Even assuming, as the word "mortgage" suggests, that the plaintiff owns real estate, these circumstances entitle him to proceed *in forma pauperis*.

## II. Section 1915(e)(2)(B) Review

### A. Applicable Legal Standard

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, is designed to ensure meaningful access to the federal courts for those persons unable to pay the costs of bringing an action. When a party is proceeding *in forma pauperis*, however, "the court shall dismiss the case at any time if the court determines[,]" *inter alia*, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

"Dismissals [under § 1915] are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *see also Mallard v. United States Dist. Court S.D. Iowa*, 490 U.S. 296, 307-08 (1989) ("Section 1915(d), for example, authorizes courts to dismiss a

'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision.").[2]

When considering whether a complaint states a claim for which relief may be granted, a court must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Although a *pro se* plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), this is "not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim[,]" *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980). To allege a civil action in federal court, it is not enough for a plaintiff merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner in which the defendant subjected the plaintiff to a harm for which the law affords a remedy. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted, the statute that provides for waiver of the filing fee also requires the court to determine whether the plaintiff's case may proceed. In other words, the plaintiff's complaint must be dismissed if the court finds it to be frivolous or malicious, seeks monetary relief from a defendant who is immune from such relief, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). In this regard, a *pro se* plaintiff's complaint must be read liberally. *Donovan v. Maine*, 276 F.3d 87, 94 (1st Cir. 2002).

---

[2] Section 1915(d) was subsequently renumbered to section 1915(e).

## B. Factual Background

So read, the plaintiff's complaint alleges, in relevant part:

E.K., a minor child with autism, attention deficit hyperactivity disorder ("ADHD"), and other developmental disorders, attended Moscow Elementary School from 2014 through September 2018. Complaint ¶ 3. In December 2016, Edward Ferreira, then the District's Director of Special Education, conducted a meeting during which E.K. was determined eligible for special education services in the category of "emotional disturbance." *Id*. ¶ 41.

The District did not hold a subsequent meeting to draft an individualized education program ("IEP"), instead drafting the IEP without input from the plaintiffs. *Id*. ¶ 43. The District claims to have implemented the IEP in late January 2017. *Id*. The IEP required weekly therapy with Marcy Melcher, as well as referral to Ms. Melcher and notification to the plaintiffs whenever E.K. became emotionally dysregulated. *Id*. Although the District requested that the plaintiffs sign documents in February 2017, it did not share copies of the IEP or other documents with the plaintiffs at that time. *Id*. ¶ 44.

In May 2017, E.K. began therapy with a new therapist, Elizabeth Corbin. *Id*. ¶ 45. The plaintiffs provided a signed consent form to Ms. Corbin in order to obtain E.K.'s records from the District. *Id*. The District initially ignored Ms. Corbin's document request, but eventually provided four documents, including the IEP. *Id*. ¶ 46. On seeing the IEP for the first time, the plaintiffs raised concerns about its contents and sought greater insight into E.K.'s disabilities and limitations. *Id*. ¶ 47.

In August 2017, E.K. began attending the Pediatric Day Treatment Program at Acadia Hospital in Bangor, Maine (the "Acadia Day Program"), where E.K. was under the care of Dr. Eric Kuntz. *Id*. ¶ 48. Dr. Kuntz diagnosed E.K. with Autistic Spectrum Disorder. *Id*. After

attending the Acadia Day Program for about seven weeks, E.K. returned to Moscow Elementary School on October 16, 2017. *Id*. ¶ 49. The Acadia Day Program requested materials and information from the District in order to provide academic services and observe E.K. in an academic setting, but the District refused without explanation to cooperate. *Id*. ¶ 50.

The District scheduled an IEP meeting for October 23, 2017, during which it was to hear recommendations from the Acadia Day Program, E.K.'s therapist, the plaintiffs, and Autism Speaks. *Id*. ¶ 52. However, because the Acadia Day Program's recommendations were not ready, discussion of those recommendations was postponed to the next IEP meeting. *Id*. During the October 23, 2017, IEP meeting, Melissa Lyons-Vitalone, who became the District's Director of Special Education in the summer of 2017, *id*. ¶ 6, unilaterally added a "daily self assessment" to E.K.'s IEP, and Wendy Belanger, E.K.'s second-grade classroom teacher, *id*. ¶ 4, stated that she did not see E.K.'s "symptoms" in the classroom and described them as misbehavior requiring punitive correction, *id*. ¶ 53.

Ms. Belanger did not comply with certain terms of the IEP; for example, failing when E.K. became emotionally dysregulated to refer her to Ms. Melcher or communicate with the plaintiffs. *Id*. ¶¶ 67, 79. The District also continued to stymie the plaintiffs' input at IEP meetings, *id*. ¶¶ 68, 103, did not reschedule the presentations of the Acadia Day Program, E.K.'s therapist, the plaintiffs, and Autism Speaks, *id*. ¶ 110, prohibited the plaintiffs from communicating with any District employee except Ms. Lyons-Vitalone, *id*. ¶ 84, and refused to consider requested accommodations or services for E.K. to which Ms. Belanger objected, *id*. ¶¶ 71-74.

The plaintiffs concluded during the weekend of March 24 and 25, 2018, that E.K.'s symptoms were continuing to deteriorate when at school and that the District was blocking their efforts to help her. *Id*. ¶ 113. After conferring with E.K.'s medical providers and therapist, they

5

determined that it was too harmful for E.K. to attend Moscow Elementary School until proper supports and accommodations were in place. *Id*.

The District, through Ms. Lyons-Vitalone, refused to acknowledge the plaintiffs' concerns and repeatedly harassed them for seven months regarding E.K.'s attendance, authoring letters declaring E.K. a truant and threatening to refer the plaintiffs to the Maine Department of Health and Human Services for neglect or take court action against them. *Id*. ¶ 130. To end the harassment, the plaintiffs transferred E.K.'s enrollment to a Cornville charter school that was too far away for E.K. to receive transportation to school. *Id*. ¶ 131.

On April 3, 2018, the plaintiffs filed a 102-page due process complaint with the MDOE, which the MDOE assigned to Jeanette Sedgwick for investigation and determination. *Id*. ¶¶ 114-15. Ms. Sedgwick found for the District in all but one respect. *Id*. ¶ 125. Then-MDOE commissioner Robert G. Hasson, Jr., accepted a proposed correction plan as sufficient recourse for the District's noncompliance. *Id*. ¶ 126. The plaintiffs inquired how to appeal that decision and were informed by an assistant attorney general, after many months, that they could file a due process hearing request. *Id*. ¶ 127. On March 17, 2019, the plaintiffs drew up a due process hearing request with 21 areas of concern and emailed it to the MDOE. *Id*. ¶ 132.

Following mediation on April 24, 2019, Melanie Frazek, the MDOE hearing officer assigned to the case ("Hearing Officer"), held an April 29, 2019, telephonic conference with the parties during which the plaintiffs stated that E.K.'s mother was scheduled for major surgery on May 14, 2019, and that they would be unavailable for the three days before and after the surgery. *Id*. ¶ 139. A pre-hearing conference was tentatively scheduled for May 17, 2019, with the understanding that if there were complications related to the surgery, all parties would be notified as soon as it became apparent that the plaintiffs were not available. *Id*.

On Friday, May 3, 2019, the District filed a motion to dismiss portions of the hearing request and a motion to compel the plaintiffs to respond to subpoenas. *Id*. ¶ 141. On Monday, May 6, 2019, the Hearing Officer granted those motions. *Id*. ¶ 142. The plaintiffs emailed the Hearing Officer, arguing that they had a right to respond to the motions before they were decided, but she summarily dismissed their argument. *Id*. On May 8 and 9, 2019, the plaintiffs filed a 13-page objection to the Hearing Officer's orders and requested accommodations pursuant to the ADA. *Id*. ¶ 143. The Hearing Officer responded that, for purposes of a due process hearing request pursuant to the IDEA, an IDEA hearing officer has no authority to rule on ADA issues. *Id*.

On May 9, 2019, the Hearing Officer denied the plaintiffs' request for an extension of time. *Id*. ¶ 144. On May 10, 2019, the District filed new motions to dismiss. *Id*. ¶ 146. On May 13, 2019, at 3:51 p.m., the Hearing Officer ordered the plaintiffs to respond to those motions by 5:00 p.m. that day. *Id*. ¶ 147. On May 13, 2019, E.K.'s mother was involved with pre-surgery procedures and arrangements. *Id*. ¶ 148. On May 14, 2019, the Hearing Officer emailed a ruling on the motions to dismiss to the plaintiffs at about the same time as E.K.'s mother was brought to the recovery room following her surgery. *Id*. ¶ 149.

The instant complaint was filed on August 12, 2019. ECF No. 1. The plaintiffs allege, among other things, that the Hearing Officer's grant of the District's motions without affording them an adequate opportunity to respond violated both the Maine Unified Special Education Regulation, Code Me. R. 05-071 ch. 101 (eff. Aug. 25, 2017) ("MUSER") and their due process rights. Complaint at [22]-[23], ¶¶ [K]-[N].

### C. Discussion

The IDEA imposes procedural and substantive requirements with regard to a child's IEP. *See, e.g., Roland M. v. Concord Sch. Comm.,* 910 F.2d 983, 987-88 (1st Cir. 1990). For example,

parents have the right to be part of the IEP "team" along with the teachers and other educational professionals charged with formulating a child's particular IEP. 20 U.S.C. § 1414(d)(1)(B); *Lessard v. Wilton-Lyndeborough Coop. Sch. Dist.,* 518 F.3d 18, 23 (1st Cir. 2008). The purpose behind such procedural safeguards is to "guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Pihl v. Mass. Dep't of Educ.,* 9 F.3d 184, 187 (1st Cir. 1993) (citation and internal quotation marks omitted).

Thus, in the event of a dispute between the school and the child's parents regarding the IEP, the parents have the right to demand a hearing by an impartial hearing officer. *See, e.g.*, 20 U.S.C. § 1415(f)(1)(A), (B)(ii). A party dissatisfied with a hearing officer's decision may seek judicial review of that decision by a state court or a federal district court, which must (i) receive the records of the administrative proceedings; (ii) hear additional evidence at the request of a party; and (iii) grant relief as it deems appropriate based upon the preponderance of the evidence. *See, e.g., id*. § 1415(i)(2)(A), (C).

"The party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation for bringing such action under this subchapter, in such time as the State law allows." 20 U.S.C. § 1415(i)(2)(B). Maine, too, provides "90 days from the date of the decision of the hearing officer to file a civil action." MUSER § XVI.19.B.

In this case, accepting as true the plaintiffs' allegation that the Hearing Officer issued the challenged orders on May 6, 2019, and May 14, 2019, the plaintiffs timely sought judicial review of the May 14, 2019, MDOE ruling. Their complaint, hence, states a claim for review of that ruling in favor of the District.

### III. Conclusion

For the foregoing reasons, I **GRANT** the plaintiff's application to proceed *in forma pauperis* and recommend that the court permit this case to proceed following section 1915 review and **ENLARGE** the deadline for service of the complaint to 90 days from the date of the court's acceptance of that recommendation.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of December, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge